```
          IN THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF ARKANSAS
                    WESTERN DIVISION


KATHY C. JOHNSON                                      Plaintiff

v.                         4:05CV00467 GH/HLJ

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration,                              Defendant
```

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge George Howard, Jr.  The parties may file specific written objections to these findings and recommendations and must provide the factual or legal basis for each objection.  An original and two copies of the objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### DISPOSITION

Plaintiff, Kathy C. Johnson, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits and Supplemental Security Income, based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the

record as a whole and free of legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged disability based on neck and back injuries as a result of an automobile accident, nerve damage, muscle damage, bone disorders, loss of feeling in her hands and loss of her voice. (Tr. 46) She was found disabled since July 15, 1996, her alleged onset

date.  (Tr. 180-82)  As part of a continuing disability review, it was determined that her disability had ceased as of May 1, 2002, and that her period of disability would be terminated July 1, 2002.  (Tr. 171)  She appealed that decision to a Disability Hearing Officer, who found that she was no longer disabled.  (Tr. 191-203)  She then appealed to an Administrative Law Judge (ALJ).

After conducting an administrative hearing, the ALJ[1] concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time from May 1, 2002, through May 16, 2004, the date of his decision.  (Tr. 23-24)  On January 26, 2005, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 7-10)  Plaintiff then filed her complaint initiating this appeal.  (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 45 years old at the time of the hearing, and, thus, 42 on May 1, 2002.  (Tr. 23, 454)  She completed high school and two years of college.  (Tr. 454)  She has past relevant work as a sales manager.  (Tr. 17, 22, 64-70, 97)

The Commissioner has established, by regulations, a multi-step evaluation for determining continuing disability:

  1)  The Commissioner first considers if the claimant is engaged

---

[1]The Hon. David J. Manley.

in substantial gainful activity.[2]  20 C.F.R. § 404.1594(f)(1) (2003). If so, and any applicable trial work period has ended, benefits are terminated.  Id.

2)   The Commissioner then determines if the claimant has an impairment or combination of impairments which meets or equals a Listing.  20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i).  If so, benefits will continue; if not, the evaluation continues.  Id.

3)   The Commissioner next determines if there has been medical improvement.  20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii). "Medical improvement" is any decrease in the medical severity of a claimant's impairments which were present at the time of the most recent favorable medical decision that claimant was disabled or continued to be disabled.   20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with a claimant's impairment(s).  Id.  If there has been improvement, the Commissioner proceeds to the next Step; if not, the Commissioner skips the next Step.  20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii) (2001).

4)   If there has been medical improvement, the Commissioner determines if it is related to the claimant's ability to do work i.e., whether there has been an increase in the claimant's residual functional capacity based on the impairment(s) that was present at

---

[2]In 2001, the regulations were amended so that the SSI determination no longer inquires as to whether a claimant is engaged in substantial gainful activity.

the time of the most recent favorable medical determination. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii). If the medical improvement is not related to claimant's ability to do work, the Commissioner proceeds to the next Step; if it is, she skips the next Step. Id.

5) If no medical improvement has been found, or if any medical improvement found is not related to claimant's ability to work, the Commissioner determines whether any exception to the medical improvement standard of review applies. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

There are two groups of exceptions. The first group:

a) If substantial evidence shows claimant is the beneficiary of advances in medical or vocational therapy or technology (related to claimant's ability to work). 20 C.F.R. §§ 404.1594(d)(1), 416.994(b)(3)(i).

b) If substantial evidence shows claimant has undergone vocational therapy (related to claimant's ability to work). 20 C.F.R. §§ 404.1594(d)(2), 416.994(b)(3)(ii).

c) If substantial evidence shows that, based on new or improved diagnostic or evaluative techniques, claimant's impairment(s) is not as disabling as it was thought to be at the time of the most recent favorable decision. 20 C.F.R. §§ 404.1594(d)(3), 416.994(b)(3)(iii).

d) If substantial evidence shows that any prior disability decision was in error. 20 C.F.R. §§ 404.1594(d)(4), 416.994(b)(3)(iv).

e) If a claimant was engaging in substantial gainful activity.

20 C.F.R. § 404.1594(d)(5).

If any of the exceptions in this first group applies, the Commissioner proceeds to the next Step. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(v).

The second group of exceptions is:

a) A prior determination or decision was fraudulently obtained. 20 C.F.R. §§ 404.1594(e)(1), 416.994(b)(4)(i).

b) Claimant does not cooperate with the Social Security Administration. 20 C.F.R. §§ 404.1594(e)(2), 416.994(b)(4)(ii).

c) The Social Security Administration is unable to find a claimant. 20 C.F.R. §§ 404.1594(e)(3), 416.994(b)(4)(iii).

d) A claimant fails to follow prescribed treatment that would be expected to restore claimant's ability to engage in substantial gainful activity. 20 C.F.R. §§ 404.1594(e)(4), 416.994(b)(4)(iv).

If any of the exceptions in this second group applies, the claimant's disability is deemed terminated. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

6) If a claimant's medical improvement is related to ability to do work, or if one of the first group of exceptions to the medical improvement standard applies, the Commissioner determines whether claimant's current impairments, in combination, are "severe," _i.e._, whether they significantly limit claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). If the impairments are "severe," the evaluation continues; if not, claimant is no longer deemed disabled. _Id._

7) The Commissioner then determines if a claimant has

sufficient residual functional capacity, despite impairments, to perform past work.  20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).  If so, the disability will have ended; if not, the evaluation continues.  Id.

8) The Commissioner considers a claimant's residual functional capacity, age, education and past work experience to determine if claimant can do other work.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If so, the disability will have ended; if not, the disability will be found to continue.  Id.

The ALJ noted that Plaintiff had been found to be disabled beginning July 15, 1996.  (Tr. 23)  He noted that, at the time of the comparison point determination, medical evidence established that she was disabled on the basis of spondylosis,[3] polyneuropathy and myasthenia gravis;[4] she met Listing 1.05C.[5]  Id.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Id.  He found that, as of May 1, 2002, while Plaintiff still had "severe" impairments, her ability to perform work activities had improved, and there had been both medical improvement and an increase in her residual

---

[3]Ankylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature.  PDR Medical Dictionary 1678 (2d ed. 2000).

[4]*A disease characterized by episodic muscle weakness caused by loss or dysfunction of acetylcholine receptors.*  The Merck Manual 1497 (17th ed. 1999).

[5]Other vertebrogenic disorders of the spine.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (1998).  Because of changes in the Listings, the current Listing 1.05C relates to amputations.   20 C.F.R. Pt. 404, Subpt. P, App. 1 (2005).

7

functional capacity.  Id.  He found that her medical improvement was related to her ability to perform basic work activities.  Id.  He found that, at least since May 1, 2002, Plaintiff retained the residual functional capacity for sedentary work.  Id.

The ALJ found that Plaintiff was unable to perform her past relevant work as a sales manager.  Id.  The ALJ correctly noted that, once Plaintiff was determined to be unable to perform her past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age, education and past work.  (Tr. 22)

The ALJ applied Plaintiff's vocational profile and the residual functional capacity which he had found, and established that Rule 201.28, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 directed a finding of not disabled.  (Tr. 23)  Thus, he found that Plaintiff's disability had ceased May 1, 2002, that benefits were properly terminated and that she had not been disabled since that date through the date of his decision.  Id.

Plaintiff takes issue with the ALJ's credibility determination.  (Br. 7-10)  The ALJ evaluated Plaintiff's subjective complaints in light of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).  (Tr. 20-22)

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints.  The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining

>  physicians relating to such matters as:
>
>  1.  the claimant's daily activities;
>
>  2.  the duration, frequency and intensity of the pain;
>
>  3.  precipitating and aggravating factors;
>
>  4.  dosage, effectiveness and side effects of medication;
>
>  5.  functional restrictions.
>
>  The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original).

There is little objective support in the record for Plaintiff's claim of continued disability.  No evaluations during the relevant time showed medical conditions that were disabling.  Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. Richmond v. Shalala, 23 F.3d 1141, 1443 (8th Cir. 1994).

Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of Plaintiff's allegations, Plaintiff's daily activities, her functional capabilities and the lack of greater restriction placed on Plaintiff by her physicians, the ALJ could rightly discount Plaintiff's subjective complaints.  See, e.g., Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); Dodson v. Chater, 101 F.3d 533, 534 (8th Cir. 1996)(after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as

a whole).

Plaintiff testified that she had to spend about 70% of her time in bed. (Tr. 459) There is a report in evidence dated January of 2002 (while Plaintiff was still drawing disability) by an investigative unit of Disability Determination for the Social Security Administration. (Tr. 212-22) Undercover investigators went to Plaintiff's home and found that she was babysitting ten to eleven children, including preparing two meals daily and an afternoon snack for them. (Tr. 212) While the investigators were there, they observed Plaintiff, while holding a one-year-old, pick up a two-year-old without any indication of pain. Id. According to the investigator, she exhibited no difficulty walking, standing, stooping or bending; gait and mobility appeared normal. Id. Also a part of the investigation is a flyer for "Miss Kathy's Kid Kare" that the investigator obtained at a local grocery store and several pages of forms. (213-22) Although Plaintiff indicated that she was not running a daycare (Tr. 212), one of the forms identified her babysitting as "Miss Kathy's Kid Kare Family Daycare" (Tr. 217). A parent-provider agreement emphasized punctually picking up children; "I often have plans after closing so please try to be as punctual as possible." (Tr. 215)

Plaintiff contends, correctly, that it is not necessary for a claimant to be completely bedridden to be considered disabled. Here, however, Plaintiff engaged in extensive daily activities, which is inconsistent with the level of pain and limitation alleged. See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004)(plaintiff

attended college classes and church, shopped for groceries, ran errands, cooked, drove, walked for exercise and visited friends and relatives); Haley v. Massanari, 258 F.3d 742, 48 (8th Cir. 2001)(plaintiff took care of personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television, listened to radio, read and visited friends and relatives); Gray v. Apfel, 192 F.3d 799, 804 (8th Cir. 1999)(plaintiff cared for himself, did household chores, drove short distance, performed other miscellaneous activities); Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999)(plaintiff cooked some meals, watered flowers around house, helped wife paint, watched television, went out for dinner, occasionally drove and occasionally visited with friends); Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997)(plaintiff dressed and bathed herself, did some housework, cooking and shopping); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1995)(daily caring for one child, driving when unable to find ride and sometimes going to grocery); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1995)(visiting neighbors, cooking own meals, doing own laundry and attending church); Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995)(carrying out garbage, carrying grocery bags, driving wife to and from work inconsistent with extreme, disabling pain); Shannon v. Chater, 54 F.3d 484, 487 (8th Cir. 1995)(plaintiff cooked breakfast, "sometimes" needed help with household cleaning and other chores, visited friends and relatives and attended church twice a month); Woolf v. Shalala, 3 F.3d at 1213 (plaintiff lived alone, drove, shopped for groceries and did housework with some help from

neighbor).

Plaintiff's work activity during the relevant period supports the ALJ's conclusion that she was not disabled.  See Dunahoo v. Apfel, 241 F.3d at 1039 (seeking work and working while applying for benefits inconsistent with complaints of disabling pain); Ostronski v. Chater, 94 F.3d 413, 418 (return to past work undercuts complaints of inability to perform any work); Roe v. Chater, 92 F.3d 672, 677 (8th Cir. 1996)(actual activities, including work, incongruous with contention that cannot work); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996)(work activity belies claim of disabling pain); Cruze v. Chater, 85 F.3d 1320, 1324 (8th Cir. 1996)(active lifestyle and performance of odd jobs tend to prove claimant can work); Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996)(wide range of activities, including working two days a week, supports finding of no disability); Bentley v. Chater, 52 F.3d 784, 786 (8th Cir. 1995)(seeking work incompatible with disability); Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994)(intention to work tends to prove ability to work); Starr v. Sullivan, 981 F.2d 1006, 1008 n.3 (8th Cir. 1992)(even though not substantial gainful activity, work activity determinative of capacity for work); Thompson v. Sullivan, 878 F.2d 1108, 1110 (8th Cir. 1989)(any work during claimed disability may show capacity for substantial gainful activity).

There are inconsistencies in Plaintiff's statements.  For instance, Plaintiff indicated on one form that she completed only the eleventh grade.  (Tr. 93)  When questioned by the ALJ, she testified she had a high school diploma and two years of college.  (Tr. 454)

The ALJ's credibility analysis was proper.  He made express credibility findings and gave multiple valid reasons for discrediting subjective complaints.  E.g., Shelton v. Chater, 87 F.3d 992, 995 (8th Cir. 1996); Reynolds v. Chater, 82 F.3d at 258; Hall v. Chater, 62 F.3d 220, 224 (8th Cir. 1995).

Plaintiff contends that the ALJ should have given greater weight to a Medical Assessment of Ability to do Work-related Activities (Physical) completed by her treating physician, Michael Langley, M.D. (Br. 10-13)  Dr. Langley's assessment was quite restrictive, among other things, limiting her to lifting less than five pounds.  (Tr. 392-93)  The ALJ considered Dr. Langley's assessment, but did not give it significant weight for several reasons, among them the fact that she routinely exceeded his limitations in her daycare work. (Tr. 21-22)  See Besler v. Sullivan, 963 F.2d 176, 178 (8th Cir. 1992)(doctor's report discounted because it was inconsistent with claimant's testimony).

He also noted that Dr. Langley was not a specialist, and that his assessment was in contrast to an evaluation by David Oberlander, M.D., a board certified neurologist.  (Tr.21)  Dr. Oberlander examined Plaintiff in April of 2002.  (Tr. 307-09)  His examination revealed that Plaintiff was neurologically intact; she showed normal bulk and tone in upper and lower extremities and strength was 5/5 in upper and lower extremities except for proximal weakness in arms and legs; fine motor skills were intact; reflexes were normal.  (Tr. 308) Her sensation, gait and station were normal.  (Tr. 309) Generally, more weight is given to the opinion of a specialist about medical

13

issues related to the area of the specialty than to the opinion of a source who is not a specialist.  20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5) (2003); see Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994).

Residual functional capacity checklists, such as the one completed by Dr. Langley, although admissible, are entitled to little weight in the evaluation of disability.  Taylor v. Chater, 118 F.3d 1274, 1279 (8th Cir. 1997); see Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)(checklist format, generality and incompleteness of assessments limited their evidentiary value); Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000)(discounting treating physician's two pages of checked boxes devoid of illuminating examples, descriptions or conclusions).

The trier of fact has the duty to resolve conflicting medical evidence.  Richardson v. Perales, 402 U.S. at 399 (1971); Vandenboom v. Barnhart, 412 F.3d 924, 928 (8th Cir. 2005).  Substantial evidence supports the ALJ's conclusion about opinion evidence.

Next, Plaintiff contends that the ALJ's decision is inconsistent.  (Br. 16-17)  She noted that the Disability Hearing Officer[6] found her past relevant work as a sales manager to be sedentary.  (Tr. 200)  She argues that the ALJ's decision that she could perform sedentary work, but could not perform her past relevant work as a sales manager, is inconsistent. Assuming, for the sake of argument, that that is true, all it means is that the ALJ could have

---

[6] He held a hearing prior to the administrative hearing before the ALJ.

14

reached a decision that Plaintiff could perform her past relevant work and stop the sequential evaluation process, rather than finding that there was other work in the economy which she could perform. The error, if any, is harmless.

Finally, Plaintiff argues that the ALJ erred in utilizing the Medical-Vocational Guidelines to find that she was not disabled, and should have instead utilized a vocational expert. (Br. 17-18)

> Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert. Groeper v. Sullivan, 932 F.2d 1234, 1235 n. 1 (8th Cir. 1991). In those instances, the ALJ cannot rely exclusively on the guidelines to direct a conclusion of whether claimant is "disabled" or "not disabled." Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir. 1988). Instead, testimony of a vocational expert must be taken. Groeper, 932 F.2d at 1235. The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines. Thompson, 850 F.2d at 349-350 (emphasis added).

Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)(emphasis in original); accord, McGeorge v. Barnhart, 321 F.3d 766, 768-69 (8th Cir. 2003); Holley v. Massanari, 253 F.3d 1088, 1093 (8th Cir. 2001); Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999).

Where, as here, the ALJ properly discredited Plaintiff's subjective complaint of nonexertional impairment, the ALJ is not required to consult a vocational expert and may properly rely on the Medical-Vocational Guidelines at Step 5. E.g., Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996). The record firmly supports the ALJ's finding that Plaintiff had no nonexertional impairment that

significantly affected her residual functional capacity to perform a full range of sedentary work activities.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

There is ample evidence in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Richardson v. Perales, 402 U.S. at 401; see also Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

IT IS SO ORDERED.

DATED this 11th day of January, 2006.

_____
Henry L. Jones, Jr.
UNITED STATES MAGISTRATE JUDGE